PEERLESS SODA FOUNTAIN SERVICE COMPANY *vs.*
MAURICE SAVIN ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 4th—decided May 23d, 1933.

(1)

*David R. Lessler,* for the appellants (defendants).

*Edward J. Lynch,* for the appellee (plaintiff).

MALTBIE, C. J. This action was brought by the plaintiff against Maurice and Betty Savin to replevy a soda fountain, and from a judgment rendered in favor of the plaintiff for possession and $1 damages the defendants have appealed. The finding, in which no substantial change can be made, states these facts:

The defendant Maurice Savin owned and operated a drug store in New Haven. On January 16th, 1929, he entered into a contract of conditional sale with the plaintiff, under which a soda fountain equipment was installed in the store. Savin agreed to pay $1664 in forty-two instalments and further agreed to purchase from the Sagal-Lou Products Company all the ice cream he might require for a period of five years, at thirty-five cents a gallon in excess of the current market price, such excess to be remitted to the plaintiff and applied in reduction of the purchase price of the fountain. The contract also provided that on default of the purchaser to pay any instalment as it became due or to keep the promises contained in the contract, the plaintiff might at its option terminate the lease and retake the property or demand the entire unpaid rental price.

About April 11th, 1929, Savin purported to transfer his business stock and fixtures to his sister, the defendant Betty Savin, but this was not a bona fide sale but one made to secure a loan; and at all times thereafter Savin continued to manage the business and was in reality the owner and party in interest. Savin made payments amounting to about $300 by remitting to the plaintiff the excess price of thirty-five cents a gallon for ice cream furnished by the Sagal-Lou Products Company, but thereafter neglected and refused to make any further payments and ceased purchasing products from the Sagal-Lou Products Company. Some time before September 4th, 1929, Savin attempted negotiations with the plaintiff with reference to his obligations to it, the plaintiff referred the matter to an attorney in New Haven who took it up with the attorney for the defendants, and thereafter they carried on negotiations by personal interviews and correspondence in regard to the matter.

At the first conference between them referred to in the finding, a suggestion was made that Savin should pay $1000 in full for the fountain equipment and receive a bill of sale therefor. On October 18th, 1929, the plaintiff wrote its attorney that it would be perfectly all right to conclude the matter for $1000 and thereafter it sent him a bill of sale, a receipted invoice and a document consenting to the discharge of the original contract, for use in settling the matter. On November 1st, 1929, its attorney informed the defendants' attorney that he had received these papers and would turn them over upon receipt of $1000, adding: "I think these papers will cover the objections which you wrote me about recently." Thereafter, and before the attorneys negotiated further, the Sagal-Lou Products Company made objection to any settlement which might release Savin from his agreement to purchase its

dairy products and the plaintiff's attorney notified the defendants' attorney that the proposed settlement could not be consummated. Subsequently the Sagal-Lou Products Company withdrew its objection and the plaintiff's attorney notified the defendants' attorney of this and that any settlement he made would be satisfactory and suggested a time and place for a meeting. Before this meeting was held, the plaintiff's attorney informed the defendants' attorney that the Sagal-Lou Products Company had renewed its objection and suggested a settlement in disregard of it. Some further negotiations and correspondence took place between the attorneys, but the settlement never was consummated and no purpose would be served by reviewing the subsequent course of events.

The trial court treated the negotiations between the parties as an effort to bring about an accord and satisfaction, and the argument before us very largely proceeded upon that theory, although the defendants make an alternative claim that they culminated in a substitute contract or novation. Whether we regard the negotiations between the parties as intended to bring about an accord and satisfaction or a substitute contract, the primary inquiry is, was a definite agreement arrived at. The trial court has not found that the minds of the parties met in any definite agreement and upon this record we must conclude that they did not. The original proposal that the defendants pay the plaintiff $1000 is not stated to have been an offer made by them but as a suggestion made in the conference between the attorneys for the parties, by whom does not appear. The letter from the plaintiff to its attorney under date of October 18th, 1929, contains no definite offer or statement of the terms of settlement other than an authority to its attorney to conclude the matter for $1000. The letter to the attorney for the defendants

of November 1st, 1929, clearly indicates that the latter had raised objections as to some matters involved in the settlement and the most the attorney for the plaintiff could say was that he thought the papers in his hands would cover those objections. The record before us very clearly indicates that there were matters involved in the arrangements between the parties which could only be definitely settled after that letter was written, and the negotiations and correspondence which took place thereafter do not show that terms of settlement ever were finally agreed upon. There was then no agreement between the parties for either an accord and satisfaction or a substitute contract and the plaintiff was in a position to assert its rights under the original contract of conditional sale.

There is no error.

In this opinion the other judges concurred.